JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **U. S. COMMODITY FUTURES TRADING COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LIONS WEALTH HOLDINGS, INC., LIONS WEALTH SERVICES, INC., 20/20 PRECIOUS METALS, INC. and BHARAT ADATIA,**<br><br>**Defendants.** | **Case No. SACV 13-01923-JLS (JPRx)**<br><br>**Honorable Josephine L. Staton**<br><br>**Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendants Lions Wealth Holdings, Inc., Lions Wealth Services, Inc. 20/20 Precious Metals, Inc. and Bharat Adatia** |

## I.   INTRODUCTION

On September 30, 2013, Plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint against Defendants Lions Wealth Holdings, Inc. and Lions Wealth Services, Inc., both d/b/a Lions Wealth Capital or "LWC" (collectively "Lions Wealth"), 20/20 Precious Metals, Inc. ("20/20 Metals"), and Bharat Adatia ("Adatia") (collectively "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.*[1]  Specifically, the Commission charged Defendants with violating Sections 4(a), 4b(a)(2)(A)-(C) and 6(c)(1) of the Act, 7 U.S.C. §§ 6(a), 6b(a)(2)(A)-(C) and 9(1) (2012), and Commission Regulation 180.1(a)(1)-(3), 17 C.F.R. ¶ 180.1(a)(1)-(3) (2013), in connection with illegal off-exchange transactions involving the purported purchase or sale of physical metals on a leveraged, margined or financed basis ("Retail Commodity Transactions").[2]

---

[1] The Commission commenced this action in the District of Nevada.  On or around December 9, 2013, that Court issued an Order transferring this case to the Central District of California.

[2] Effective July 16, 2011, Section 742 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Public Law 111-203, 124 Stat. 1376 (2010), broadened the scope of the CFTC's jurisdiction to include financed commodity transactions with retail customers, including those at issue in this matter by amending Section 2(c)(2) of the Act to create a new subparagraph, Section 2(c)(2)(D), entitled "Retail Commodity Transactions".  Specifically, this broadened jurisdiction requires that financed commodity transactions with retail customers be executed on an exchange and, among other things, subjects these transactions to Section 4(a) of the Act, 7 U.S.C. § 6(a), and the anti-fraud provisions of Section 4b of the Act,

2

## II.   CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants Lions Wealth, 20/20 Metals and Adatia:

1.        Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendants Lions Wealth Holdings, Inc., Lions Wealth Services, Inc. 20/20 Precious Metals, Inc. and Bharat Adatia ("Consent Order");

2.        Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.        Acknowledge service of the summons and Complaint;

4.        Admit the jurisdiction of this Court of them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

---

7 U.S.C. § 6b.  In addition, effective August 15, 2011, Section 753 of the Dodd-Frank Act amended Section 6(c) of the Act, 7 U.S.C. § 9 (2012), broadened the CFTC's anti-fraud jurisdiction.  The Commission subsequently issued a related regulation, specifically Regulation 180.1, 17 C.F.R. § 180.1 (2013), to implement that law.

5.     Admit the jurisdiction of the CFTC over the conduct and Retail Commodity Transactions at issue pursuant to the Act, 7 U.S.C. §§ 1 *et seq.;*

6.     Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e);

7.     Waive**:**

(a)  any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2013), relating to, or arising from, this action;

(b)  any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c)  any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)  any and all rights of appeal from this action;

8.     Consent to the continued jurisdiction of this Court over them for purposes of implementing and enforcing the terms and conditions of this Consent

4

Order and for any other purpose relevant to this action, even if Defendants now or in the future reside outside the jurisdiction of this Court;

9.     Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendants shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

11.     By consenting to the entry of this Consent Order, neither admit nor deny the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which they admit. Further, Defendants agree and intend that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this

Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendants (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2013); and/or (c) any proceeding to enforce the terms of this Consent Order;

       12.    Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 76 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

       13.    Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

## III.    FINDINGS AND CONCLUSIONS

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, Permanent Injunction and Equitable Relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

6

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.     Findings of Fact**

    **1.  The Parties to this Consent Order**

14.     Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*  From at least July 16, 2011 through July 31, 2012, Defendant Lions Wealth Holdings, Inc. ("LWH") was an active Nevada corporation with its principal place of business in in San Juan Capistrano, California.  From at least July 16, 2011 through the present, Defendant Lions Wealth Services, Inc. ("LWS") has been an active Nevada corporation with its principal place of business in San Juan Capistrano, California.  Neither LWH nor LWS has been registered with the Commission in any capacity.

15.     From at least November 2009 through December 2012, when its incorporation was revoked, Defendant 20/20 Precious Metals, Inc. was a Nevada corporation.  From at least July 16, 2011 through February 22, 2013, 20/20 Metals maintained an office in San Juan Capistrano, California.  20/20 Metals has never been registered with the Commission in any capacity.

16.     Defendant Bharat Adatia, also known as Brad Adatia, resides in San Juan Capistrano, California.  Adatia is the sole officer and director of LWH and

7

20/20 Metals, and the president and director of LWS.  Adatia managed and ran the day-to-day operations of Lions Wealth and 20/20 Metals, including communicating with Hunter Wise Commodities, LLC and its various subsidiaries and related entities (collectively "Hunter Wise") about retail metals transactions. Adatia was registered with the Commission in various capacities from 1996 through 2009, including as an associated person of 20/20 Trading Company, Inc. ("20/20 Trading"), a registered introducing broker ("IB"), from 2000 to 2009.

**2.  Overview of Defendants' Business Model**

17.    Beginning on or shortly after July 16, 2011, the date Section 2(c)(2)(D) of the Act became effective, and continuing through at least February 22, 2013 (the "relevant time"), Defendants LWH and LWS, both doing business as "Lions Wealth Capital" or "LWC", through their officers, agents and other persons acting on their behalf, including Defendant Adatia, and defendant 20/20 Metals, through its officers, agents and other persons acting on its behalf, including Adatia, offered to enter into, entered into, confirmed the execution of, and conducted an office and business in the United States for the purpose of soliciting, accepting orders for, and otherwise dealing in illegal, off-exchange, financed commodity transactions with retail customers.

18.    Defendants falsely claimed to sell physical commodities, including gold, silver, platinum, and palladium, in off-exchange transactions to retail

customers throughout the United States.  Most notably, Defendants falsely claimed to: (a) sell actual physical metals to customers; (b) make loans to customers to purchase the physical metals; (c) transfer title of physical metals to customers; and (d) arrange for the transfer and storage of customers' physical metals in independent depositories where such metal purportedly was held on the customers' behalf.

19.     In fact, Defendants did not purchase, sell, transfer ownership of, or arrange for storage of any physical metals in connection with the financed commodity transactions, and Defendants never had possession of, or title to, the physical metals they purported to purchase, sell, finance and/or transfer on behalf of retail customers.  Defendants also did not lend funds to customers to purchase physical metals or advance or loan physical metals to customers.  Rather, during the relevant time, Defendants introduced their retail customer accounts to Hunter Wise, a purported precious metals dealer that recorded and tracked customer orders and trading positions.  In reality, Hunter Wise did not purchase, sell, finance and/or transfer metals in connection with Defendants' financed transactions, but rather traded derivatives in its own margin accounts.  Defendants knew or recklessly disregarded that Hunter Wise did not sell or transfer ownership of any physical metals and/or store physical metals in any depositories for or on behalf of Lions

Wealth and/or 20/20 Metals retail customers.  Defendants also did not disclose their relationship with Hunter Wise to retail customers.

20.     Lions Wealth and 20/20 Metals customers were charged a commission (up to 15% of the total metal value of a single transactions and up to 38% of the funds deposited for each transaction), a price spread (a 1.5-3% mark-up or mark-down from the current price of the metal), interest on the purported loan (at an annual rate of approximately 9.5%) and other fees (such as a "service fee" of approximately 7% annually on the total market value of the account) for the Retail Commodity Transactions.  The customer's equity increased or decreased as prices of metals fluctuated, and was also subject to depletion on a daily basis by interest and service fees.  When a customer's equity fell below 15% of the value of the total trading position, the customer received a margin call, requiring the customer to deposit additional funds in order to maintain the trading position.  If the customer's equity dropped to 9% of the total value, any open trading positions were liquidated.

21.     Although no physical metal was held anywhere in the Lions Wealth or 20/20 Metals customers' names, Lions Wealth and 20/20 Metals fraudulently charged Lions Wealth's and 20/20 Metals' customers commissions on orders for purchasing metals, interest on non-existent loans to finance supposed metals purchases, storage fees on non-existent metal, and other fees supposedly incurred

in connection with the purchase of physical metals.  In the course of this scheme, during the relevant time, at least 44 Lions Wealth retail customers collectively incurred at least $1,807,712 in trading losses, commissions, interest charges and other fees, and at least 30 20/20 Metals retail customers collectively incurred at least $570,266 in trading losses, commissions, interest charges and other fees.

### 3. Defendants Knew or Recklessly Disregarding that there Was No Metal Underlying the Retail Commodity Transactions

22.     On April 26, 2011, prior to the effective date of the Dodd-Frank Act and the broadening of the CFTC's anti-fraud jurisdiction, the Commission filed a civil injunctive enforcement action in the U.S. District Court for the Central District of California against 20/20 Metals and Adatia, as well as 20/20 Trading, a defunct entity and non-party to this action, and various individual defendants.  *See CFTC v. 20/20 Trading Company, Inc. et al.*, Case No. SACV 11-643-JLS (FMOx) (CD Cal.) (the "Prior 20/20 Litigation").

23.     In the Prior 20/20 Litigation, the Commission charged the defendants with committing fraud in connection with both commodity options trading and leveraged metals sales.  As to the purported sale of precious metals to retail customers, the business model employed by 20/20 Metals and 20/20 Trading prior to April 26, 2011, and at issue in the Prior 20/20 Litigation, was the same or substantially similar to the business model utilized for the Retail Commodity

11

Transactions as more fully described herein.  Ultimately, the Court found that – prior to the broadening of the Commission's authority under the Dodd-Frank Act – the Commission lacked jurisdiction over the defendants' leverage metals business and dismissed those claims.

24.     During the course of the Prior 20/20 Litigation, the Court appointed a temporary receiver who filed a report on May 23, 2011.  *See CFTC v. 20/20 Trading, Rept. of Temporary Receiver's Activities*, Doc. No. 60. (CD Cal. May 23, 2011).  Among other things, the receiver advised the Court and the parties in the Prior 20/20 Litigation that, after reviewing documents and conducting interviews with Adatia and representatives from Hunter Wise, among others, he was unable to "verify the existence, ownership, and safekeeping of precious metals" purportedly purchased and held in 20/20 Trading and 20/20 Metals customer accounts.

25.     Adatia received and reviewed the receiver's report, and therefore knew or recklessly disregarded that the court appointed receiver had been unable to identify, locate, and/or inspect any metal purportedly held on behalf of retail customers.  Nevertheless, Adatia subsequently failed to verify that any depository held or was holding metal on behalf of 20/20 Trading, 20/20 Metals, Lions Wealth and/or any of their customers during the relevant period of this action.

### 4. Defendants Solicited Customers for Illegal, Off-Exchange Retail Commodity Transactions and Falsely Represented that Customers Were Purchasing Actual Physical Metal

26.     In connection with the Retail Commodity Transactions, Lions Wealth's website falsely represented that: (a) Lions Wealth's retail customers could purchase physical commodities, specifically gold, silver, platinum and palladium; (b) customers purchased the "actual physical commodity" in the "form of either bullion bars or coins", as opposed to "buy[ing] a futures or options contract on an underlying commodity"; and (c) customers could elect to receive physical metals or have Lions Wealth store metals on the customer's behalf in "a depository selected by LWC" as Lions Wealth is "tied to and work[s] with experts who understand the specifics of storing metal bullion."  Similarly, 20/20 Metals' website claimed that retail customers could either take delivery of physical metals or rely on 20/20 Metals and its "experts who understand the specifics of storing metal bullion" for storage services—"We know how to keep your bullion safe and sound."  The website also references the possibility of financing a metals purchase.

27.     In addition, Defendants' written marketing materials falsely represented that in Retail Commodity Transactions customers purchased physical metals through a financing arrangement that had "the benefits of a 'down payment' similar to those found in real estate, where you buy a property" but "unlike real estate, the non-recourse loan . . . has limited risk similar to an 'option', but with no

13

immediate expiration date to worry about.  With no ticking clock, [customers] have an open-ended commodity transaction."

28.    Through their officers, agents and other persons acting on their behalf, including Adatia, both Lions Wealth and 20/20 Metals knew or recklessly disregarded that, in connection with their Retail Commodity Transactions, neither they nor Hunter Wise purchased or sold physical metals, stored metals, delivered metals to an affiliate, bank or depository, or lent funds to customers for the purchase of physical metals.  Defendants also knew or recklessly disregarded the fact that there were no accounts with any metals depository holding physical metals in the name of Lions Wealth, 20/20 Metals and/or any of their retail customers.

### 5. Defendants Made Material Misrepresentations to Retail Customers about the Purchase, Sale, Financing and Delivery of Physical Metal

29.    Most, if not all, Lions Wealth customers executed the Customer Purchase and Sale Agreement (the "Purchase Agreement") in which Lions Wealth falsely represented that customers were purchasing "physical commodities" from Lions Wealth Capital "on credit with financing provided by Lions Wealth Service[s] Inc."  Prior to July 16, 2011, most if not all 20/20 Metals customers executed a Purchase Agreement with 20/20 Metals that contained the same or substantially similar provisions as those quoted herein.

30.     In the Purchase Agreement, Defendants knowingly or recklessly misrepresented that, within seven days of receiving a customer's payment of the required portion of the purchase price, they would "deliver the commodities to Customer, to Customer's designee, or for the benefit of Customer to banks or depositories used for the purpose of safekeeping Customer commodities (collectively referred to as Bank)." Further, Defendants represented that "Ownership of Commodities purchased by Customer, subject to any security interest therein, passes to Customer upon delivery to Customer, Customer's appointed designee, or to Bank to be held for Customer," and that "Commodities transferred to Bank for Customer will be delivered as an undivided share of a fungible lot and held in safekeeping on a fungible basis with the commodities of other Bank Customers." Finally, in the Purchase Agreement, Lions Wealth represented that LWC (or, as applicable, 20/20 Metals) "may utilize one or more sources, including its own inventory, to acquire the physical commodities necessary to fulfill its obligations to Customer."

31.     Most, if not all, Lions Wealth customers executed a Loan, Security and Storage Agreement (the "Loan Agreement") with Lions Wealth in which Lions Wealth falsely represented that LWS loans "physical commodities" or "sums of money to purchase physical commodities, including, but not limited to, delivery to a depository, costs, fees, storage, collateral, security interests, certain risks and

15

costs associated with each loan transaction" to retail customers in exchange for a "security interest" in all "commodities" belonging to and held on behalf of the customer.   Prior to July 16, 2011, most if not all 20/20 Metals customers executed a Loan Agreement with 20/20 Metals that contained the same or substantially similar provisions as those quoted herein.

32.     The Loan Agreement states that "[c]ommodities transferred to Bank for Borrower will be delivered as an undivided share of a fungible lot and held in safekeeping on a fungible basis with the commodities of other Bank customers." The Loan Agreement further specifies that "[u]pon delivery of commodities on behalf of Borrower to Bank, Borrower will receive a confirmation evidencing that such quantity of commodities has been delivered to the depository and is being and will continue to be held as an undivided share of the commodities so held by the depository, on the purchaser's behalf, free and clear of all liens and encumbrances, other than liens of [LWS or 20/20 Metals]."

33.     In fact, Defendants did not disburse any funds for the so-called "loan" or "financed" portion of Retail Commodity Transactions, nor did Defendants ever intend to loan or finance the Retail Commodity Transactions.   Moreover, to the extent that Hunter Wise purported to extend purchase money loans to Defendant's customers, such loans were a sham because Hunter Wise never obtained any physical metal for, or delivered any such metal to, those customers.

16

34.     Nevertheless, during the relevant time, Lions Wealth customers collectively paid $47,161 in interest on the purported loans to retail customers and 20/20 Metals customers collectively paid $56,551 in interest on the purported loans to retail customers in connection with Retail Commodity Transactions.

35.     Further, Lions Wealth and 20/20 Metals customer account statements reflect metal purchases and sales that were not actually made.  Hunter Wise generated the customer account statements and transmitted them to Lions Wealth and/or 20/20 Metals, or directly to retail customers, pursuant to certain agreements between Hunter Wise and Defendants.  The customer account statements notified retail customers of "commodities purchased", "opening buy", "closing buy" and/or "commodity received" into the account.  The statements also informed customers that they had "loan fees" and a loan "balance" even though Defendants did not disburse any funds for the so-called "loan" or "financed" portion of Retail Commodity Transactions and loans purportedly extended by Hunter Wise were a sham.

36.     Defendants also falsely claimed to "ship" or "receive" metals following each trade in Transfer of Commodity notices.  The Transfer of Commodity notices sent to retail customers included, among other provisions, language reflecting "Produced Received into your Account" and a statement that Lions Wealth "hereby confirms that a depository ("Custodian") authorized by

17

agreements referred to below has received custody of the goods therefore ("commodities") identified above."

**B.      Conclusions of Law**

      **1.  Jurisdiction and Venue**

    37.      This Court has jurisdiction over this action pursuant to 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

    38.      The Commission has jurisdiction over the solicitations and transactions at issue in this action pursuant to Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012).

    39.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendant Adatia resides in this District, Defendants Lions Wealth and 20/20 Metals maintained offices in this District, and certain of the acts and practices in violation of the Act occurred within this District.

### 2. Illegal Off-Exchange Transactions in Violation of Section 4(a) of the Act

40.     Section 4(a) of the Act, 7 U.S.C. § 6(a), in relevant part, makes it unlawful for any person to offer to enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

41.     By the conduct described in paragraphs 14 through 36, above, Defendants Lions Wealth and 20/20 Metals, individually and/or through their employees and agents including Adatia, violated Section 4(a) of the Act by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting or accepting orders for, or otherwise dealing in, transactions in, or in connection with, Retail Commodity Transactions.

42.     The foregoing acts, omissions and failures of the officials, agents, or persons acting for Lions Wealth and 20/20 Metals occurred within the scope of their employment, agency, or office with these entity defendants, and are deemed

19

to be the acts, omissions and failures of those defendants by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

43.     During all relevant times, Adatia directly or indirectly controlled Lions Wealth and 20/20 Metals, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations of Lions Wealth and 20/20 Metals.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Adatia is therefore liable as a controlling person for the violations by Lions Wealth and 20/20 Metals to the same extent as those Defendants.

44.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

**3. Fraud by Misrepresentations in Violation of Section 4b(a)(2)(A), (C) of the Act.**

45.     By the conduct described in paragraphs 14 through 36, above, Lions Wealth and 20/20 Metals, individually and through their agents and employees including Adatia, cheated or defrauded, or attempted to cheat or defraud, their retail customers in, or in connection with, Retail Commodity Transactions by knowingly or recklessly making false representations of material fact, or omitting

material facts to customers and, as to Lions Wealth, prospective customers in

violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C)

(2012).

46.    The foregoing acts, omissions and failures of the officials, agents, or

persons acting for Lions Wealth and 20/20 Metals occurred within the scope of

their employment, agency, or office with these entity Defendants, and are deemed

to be the acts, omissions and failures of those Defendants by operation of Section

2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2012), and Regulation 1.2, 17 C.F.R. § 1.2

(2013).

47.    During all relevant times, Adatia directly or indirectly controlled

Lions Wealth and 20/20 Metals, and did not act in good faith or knowingly

induced, directly or indirectly, the acts constituting the violations of Lions Wealth

and 20/20 Metals.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Adatia

is therefore liable as a controlling person for the violations by Lions Wealth and

20/20 Metals to the same extent as those Defendants.

48.    Unless restrained and enjoined by this Court, there is a reasonable

likelihood that the Defendants will continue to engage in the acts and practices

alleged in the Complaint and in similar acts and practices in violation of the Act

and Regulations.

**4.  Fraud by False Statements**

49.     By the conduct described in paragraphs 14 through 36, above, Defendants Lions Wealth and 20/20 Metals, through their agents and employees including Adatia, knowingly or recklessly caused false written monthly account statements to be made to customers in connection with Retail Commodity Transactions in violation of Section 4b(a)(2)(B) of the Act, 7 U.S.C. § 6b(a)(2)(B) (2012).

50.     The foregoing acts, omissions and failures of the officials, agents, or persons acting for Lions Wealth and 20/20 Metals occurred within the scope of their employment, agency, or office with these entity Defendants, and are deemed to be the acts, omissions and failures of those Defendants by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

51.     During all relevant times, Adatia directly or indirectly controlled Lions Wealth and 20/20 Metals, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations of Lions Wealth and 20/20 Metals.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Adatia is therefore liable as a controlling person for the violations by Lions Wealth and 20/20 Metals to the same extent as those Defendants.

52.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

**5.  Use of a Deceptive Scheme and Artifice to Defraud in Violation of Section 6(c)(1) of the Act and Regulation 180.1(a)(1)-(3)**

53.     Beginning on August 15, 2011 and continuing at least through February 22, 2013, and by the conduct described in paragraphs 14 through 36, above, Defendants Lions Wealth and 20/20 Metals, by and through Adatia and other agents or persons acting on their behalf, in connection with contracts of sale of commodities in interstate commerce, knowingly or recklessly used or employed a manipulative device,, scheme and/or artifice to defraud in violation of Commission Regulation 180.1(a)(1).  During that same time, Lions Wealth and 20/20 Metals, by and through Adatia and other agents or persons acting on their behalf, knowingly or recklessly made untrue or misleading statements of material fact to retail customers in violation of Commission Regulation 180.1(a)(2); and engaged in acts practices or a course of business which operated as a fraud upon their retail customers in violation of Commission Regulation 180.1(a)(3).

54.     By the conduct described above, Defendants violated Section 6(c)(1) of the Act and Regulation 180.1(a)(1)-(3) by knowingly or recklessly: (1) making

the material misrepresentations on their websites written marketing materials and in the customer Purchase Agreements and Loan Agreements as set forth in paragraphs 46 to 51, and (2) issuing false statement to customers.

55.   The foregoing acts, omissions and failures of the officials, agents, or persons acting for Lions Wealth and 20/20 Metals occurred within the scope of their employment, agency, or office with these entity defendants, and are deemed to be the acts, omissions and failures of those defendants by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2 (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

56.   During all relevant times, Adatia directly or indirectly controlled Lions Wealth and 20/20 Metals, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations of Lions Wealth and 20/20 Metals.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Adatia is therefore liable as a controlling person for the violations by Lions Wealth and 20/20 Metals to the same extent as those Defendants.

57.   Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.   PERMANENT INJUNCTIONS

**IT IS HEREBY ORDERED THAT:**

58.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants Lions Wealth, 20/20 Metals, and Adatia are permanently restrained, enjoined and prohibited from directly or indirectly:

a.  Offering, entering into, executing, confirming, conducting any business for the purpose of soliciting or accepting orders for, or otherwise dealing in any transaction in or in connection with a retail commodity transaction, including without limitation financed precious metals transactions in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a);

b.  Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any retail commodity transaction, including without limitation financed precious metals in violation of Section 4b(a)(2)(A), (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C);

c.  Making or causing to be made any false report or statement in or in connection with any order to make, or the making of, any retail commodity transaction, including without limitation financed precious metals in violation of Section 4b(a)(2)(B) of the Act, 7 U.S.C. § 6b(a)(2)(B); and

d.  Using or employing, or attempting to use or employ, a manipulative device, scheme or artifice to defraud; engaging or attempting to engage in acts, practices or a course of business which operates as a fraud upon retail customers in violation of Section 6(c)(1) of the Act, 7 U.S.C. §9(1) and Commission Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2013).

59.     Defendants are also permanently restrained, enjoined and prohibited

from indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is
   defined in Section 1a of the Act, 7 U.S.C. § 1a);

b. Entering into any transactions involving commodity futures, options on
   commodity futures, commodity options (as that term is defined in
   Regulation 1.3(hh)), 17 C.F.R. § 1.3(hh) (2013)) ("commodity options"),
   security futures products, swaps (as that term is defined in Section 1a(47)
   of the Act and as further defined by Commission Regulation 1.3(xxx),
   17 C.F.R. § 1.3(xxx) (2013)), and/or foreign currency (as described in
   Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B)
   and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal accounts or
   for any accounts in which they have a direct or indirect interest;

c. Having any commodity futures, options on commodity futures,
   commodity options, security futures products, swaps, and/or forex
   contracts traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person
   or entity, whether by power of attorney or otherwise, in any account
   involving commodity futures, options on commodity futures, commodity
   options, security futures products, swaps, and/or forex contracts;

e. Soliciting, receiving or accepting any funds from any person for the
   purpose of purchasing or selling any commodity futures, options on
   commodity futures, commodity options, security futures products, swaps,
   and/or forex contracts;

f. Applying for registration or claiming exemption from registration with
   the Commission in any capacity, and engaging in any activity requiring
   such registration or exemption from registration with the Commission,
   except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)
   (2013); and

g. Acting as a principal (as that term is defined in Regulation 3.1(a),
   17 C.F.R. § 3.1(a) (2013)), agent, or any other officer or employee of any

26

person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013).

## V.      RESTITUTION AND CIVIL MONETARY PENALTIES

### A.     Restitution

60.      Defendants Lions Wealth and Adatia shall joint and severally pay restitution in the amount of one million, seven hundred and seventy three thousand, thirteen dollars ($1,773,013) (the "LWC Restitution Obligation"), plus post-judgment interest within thirty (30) days of the date of the entry of this Consent Order.  Defendants 20/20 Metals and Adatia shall joint and severally pay restitution in the amount of five hundred forty three thousand, two hundred and twenty seven dollars ($543,227) (the "20/20 Restitution Obligation"), plus post-judgment interest within thirty (30) days of the date of the entry of this Consent Order.  The LWC Restitution Obligation and 20/20 Restitution Obligation in the combined sum of two million, three hundred and sixteen thousand, two hundred and forty dollars ($2,316,240), plus post-judgment interest are collectively referred to herein as the "Restitution Obligation".  Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

61.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' customers, the Court appoints Melanie Damian, Esq., as Monitor (the "Monitor").[3]  The Monitor shall collect restitution payments from Defendants and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the Monitor shall not be liable for any action or inaction arising from her appointment as Monitor, other than actions involving fraud.

62.     Defendants shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "Lions Wealth – Settlement/Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to Melanie Damian, Damian & Valori, LLP, 1000 Brickell Avenue, Suite 1020, Miami, Florida 33131, under cover letter that identifies the paying Defendants and the name and docket number of this proceeding.  Defendants shall

---

[3] On December 5, 2012, the Commission filed a civil enforcement action in the U.S. District Court for the Southern District of Florida against Hunter Wise and various other entities and individuals.  *See CFTC v. Hunter Wise Commodities, LLC, et al*., Case No. 9:12-cv-81311-DMN (SD Fla.) (the "Hunter Wise Litigation").  On February 22, 2013, the Southern District of Florida appointed Ms. Damian as the  Special Monitor and Corporate Manager in the Hunter Wise Litigation.  *See* Order Temporarily Appointing Special Corporate Monitor (Doc. No. 77).  In connection with her duties in that matter, the Monitor has implemented a Claims Administration Process and Distribution Plan for all customers and creditors of Hunter Wise, among other entities.

simultaneously transmit copies of the cover letter and form of payment to the Chief Financial Officer, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and to the Chicago Regional Counsel, U.S. Commodity Futures Trading Commission, 525 W. Monroe Street, Suite 1100, Chicago, IL 60661.

63.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate.  The Monitor shall reduce the Restitution Obligation by amounts distributed to Defendants' customers in connection with the Hunter Wise Litigation.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in paragraphs 70 and 71, below.

64.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' customers to whom the Monitor, in its sole discretion, may determine

to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

65.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

66.     The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Defendants, or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any person that exist under state or common law.

67.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Lions Wealth and/or 20/20 Metals customer  who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce compliance with this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance

with any provision of this Consent Order and to hold Defendants in contempt for any violations of any provision of this Consent Order.

68.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Civil Monetary Penalty**

69.     Defendants shall pay a civil monetary penalty in the amount of $3,072,490 ("CMP Obligation"), plus post-judgment interest within thirty (30) days of the date of the entry of this Consent Order.  Specifically, Defendants Lions Wealth and Adatia shall jointly and severally pay $2,612,468 and Defendants 20/20 Metals and Adatia shall jointly and severally pay $460,022, plus post-judgment interest.  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

70.     Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

31

U.S. Commodity Futures Trading Commission
Division of Enforcement
ATTN:  Accounts Receivables – AMZ 340
E-mail Box:  9-AMC-AMZ-AR-CFTC
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
Telephone: (405) 954-5644

71.    If payment by electronic funds transfer is chosen, Defendants shall

contact Nikki Gibson or her successor at the address above to receive payment

instructions and shall fully comply with those instructions.  Defendants shall

accompany payment of the CMP Obligation with a cover letter that identifies

Defendants and the name and docket number of this proceeding.  Defendants shall

simultaneously transmit copies of the cover letter and the form of payment to the

Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and the Chicago

Regional Counsel, U.S. Commodity Futures Trading Commission, 525 W. Monroe

Street, Suite 1100, Chicago, IL 60661.

**C.    Provisions Related to Monetary Sanctions**

72.    Partial Satisfaction: Any acceptance by the Commission or the

Monitor of partial payment of Defendants' Restitution Obligation or CMP

Obligation shall not be deemed a waiver of their obligation to make further

payments pursuant to this Consent Order, or wavier of the Commission's right to
seek to compel payment of any remaining balance.

**D.      Cooperation**

73.      Defendants shall cooperate fully and expeditiously with the
Commission, including the Commission's Division of Enforcement, and any other
governmental agency in this action, and in any investigation, civil litigation, or
administrative matter related to the subject matter of this action or any current or
future Commission investigation related thereto.

## VI.      MISCELLANEOUS PROVISIONS

74.      On December 5, 2012, the Commission filed a civil enforcement
action in the U.S. District Court for the Southern District of Florida against Hunter
Wise and various other entities and individuals. *See CFTC v. Hunter Wise
Commodities, LLC, et al.*, Case No. 9:12-cv-81311-DMN (SD Fla.) (the "Hunter
Wise Litigation").  On May 16, 2014, the Hunter Wise Court entered an Order of
Final Judgment, Permanent Injunction, Civil Monetary Penalty and Other
Equitable Relief against the defendants in that case.  (Doc. No. 306).  Among other
relief, the Court ordered the Hunter Wise defendants to pay restitution in the
amount of $52,643,399.19.  To the extent funds are returned to Lions Wealth
and/or 20/20 Metals customers in connection with claims administration process
and plan of distribution in the Hunter Wise Litigation, Defendants' Restitution

Obligation shall be reduced by that amount, on a dollar-for-dollar basis.  To the extent Defendants claim they are entitled to such set-off, they shall provide notice to the Commission in the manner set forth in paragraph 75, below.

75.     Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:
Rosemary Hollinger
Deputy Director
U.S. Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, IL 60661

Notice to Defendants:
Michael S. Winsten
Winsten Law Group
27201 Puerta Real, Suite 140
Mission Viejo, CA 92691

All such notices to the Commission shall reference the name and docket number of this action.

76.     Change of Address/Phone:  Until such time as Defendants satisfy in full their Restitution Obligation and CMP Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

77.     Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

78.     Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

79.     Waiver: The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

80.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

81.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

82.     Authority: Bharat "Brad" Adatia hereby warrants that he is the sole officer and director of Defendants Lions Wealth Holdings, Inc. and 20/20 Precious Metals, Inc. and the president and director of Defendant Lions Wealth Services, Inc., and that this Consent Order has been duly authorized by LWH, 20/20 Metals and LWS and he has been duly empowered to sign and submit this Consent Order on their behalf.

83.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

84.     Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceeding, they may not challenge the validity of this Consent Order.

THERE BEING NO JUST REASON FOR DELAY, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction

**SO ORDERED:**

Dated:  January 16, 2015

_____
Honorable Josephine L. Staton
United States District Judge

37